O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA M. CHAVERS,<br><br>              Plaintiffs,<br>    v.<br><br>GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, a Delaware Corporation; MORTGAGE ELECTRONIC REGISTRATION a.k.a. MERS, a Delaware Corporation; DIRECT FUNDING, a California Corporation; FIDELITY NATIONAL TITLE, a business organization form unknown; EXECUTIVE TRUSTEE SERVICES, LLC dba ETS SERVICES, LLC as TRUSTEE, a Delaware Corporation; and All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiff's Title, or any Cloud on Plaintiff's Title Thereto; and DOES 1 through 100, inclusive,<br><br>              Defendants. | Case No. 2:11-cv-01097-ODW (SSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [56]** [Filed 04/12/12] |

## I.    INTRODUCTION

Before the Court is Defendants GMAC Mortgage, LLC, ("GMAC") Mortgage Electronic Registration Systems, Inc. ("MERS") and Executive Trustee Services, LLC's ("ETS") (collectively "Defendants") Motion to Dismiss Plaintiff Linda M.

Chavers's Third Amended Complaint ("TAC").[1] (ECF No. 56.) For the following reasons, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a mortgage loan Plaintiff obtained from Direct Funding ("Direct") on March 17, 2006, in the amount of $399,000.00 (the "Subject Loan").[2] (TAC ¶ 24.) A Deed of Trust naming Direct as beneficiary of the Subject Property located at 1226 Westcove Place, West Covina, California 91790 secured the note. (TAC ¶ 1.) On October 16, 2006, a Corporation Assignment of Deed of Trust was recorded with the Los Angeles County Recorder's Office ("LACRO"), which assigned beneficial interest in the Deed of Trust to MERS. (Def.'s Request for Judicial Notice ("RJN"), Ex. B.)[3] On January 18, 2007, a Substitution of Trustee was recorded with LACRO, substituting ETS as the trustee of the Deed of Trust. (Def.'s RJN, Ex. C.)

On September 7, 2007, Plaintiff filed a voluntary petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court, Central District of California. *In re: Linda M. Chavers*, No. 2:07-BK-17893-SK (Bankr. C.D. Cal.). (TAC ¶ 38.) Plaintiff alleges she and the bankruptcy trustee were making payments throughout the

---

[1] Defendant Direct Funding does not join in these Defendants' Motion to Dismiss, nor does it independently move to dismiss any claims asserted against it. The Court therefore does not address any claims as addressed against Direct, except as necessary to inform Plaintiff's claims against the moving Defendants.

[2] The Court notes that Plaintiff secured two previous loans with Direct, but they are irrelevant for purposes of this Motion. The operative deed of trust is the one executed March 17, 2006, which replaced the prior loans.

[3] To the extent the Court relies on any documents not attached directly to Plaintiff's TAC, those documents are referenced in the TAC and are incorporated by reference. Further, "[a] trial court may presume that public records are authentic and trustworthy," *Gilbrook v. City of Westminster*, 177 F. 3d 839, 858 (9th Cir. 1999), and, thus, fall within the purview of Federal Rule of Evidence 201. Rule 201 provides, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, the Court takes judicial notice of the filing dates for the documents to which it cites, but does not take judicial notice of the facts contained therein.

bankruptcy process for several months leading up to the foreclosure sale, and "GMAC failed to properly account for such payments and instead knowingly and falsely represented to" Plaintiff, MERS, and the bankruptcy court that Plaintiff "missed payments."[4] (TAC ¶ 74.) Plaintiff further contends she and others relied on this misrepresentation, and that MERS used these "false accountings" to file "a Motion to Lift the Automatic Stay with the bankruptcy court." *Id.* Such motion was granted, Plaintiff avers, because both GMAC and MERS misled the court. (TAC ¶ 75.)

As of January 9, 2009, Plaintiff was allegedly in default by $21,600.97. (Def.'s RJN, Ex. D.) As a result, ETS recorded a Notice of Default and Election to Sell Under Deed of Trust. *Id.* ETS then recorded a Notice of Trustee's Sale on April 14, 2009. (Def.'s RJN, Ex. E.) On January 21, 2010, GMAC obtained title to the Subject Property from the foreclosure sale for the purchase price of $414,000.00 (Def.s' RJN, Ex. F), despite Plaintiff's contention that she was not in default. (TAC ¶ 74.)

Pursuant to the Court's March 9, 2012 Order granting Defendants' previous motion to dismiss with leave to amend, Plaintiff filed her TAC on March 23, 2012. (ECF Nos. 48, 50.) Defendants filed the instant Motion on April 12, 2012, and Plaintiff filed her Opposition on April 24, 2012. (ECF Nos. 56, 58.) Defendants filed their Reply on April 27, 2012. (ECF No. 60.) The Court has carefully considered both Defendants' and Plaintiff's papers and will address the merits without oral

---

[4] Plaintiff alleges "GMAC was responsible for preparing and submitting the Proof of Claim for the subject loan in [P]laintiff's bankruptcy case, which it did on or about September 26, 2007, wherein it stated that the amount of secured claim was $432,651.44, and the amount of arrearage was $9,649.74." (TAC ¶ 73.) In a simultaneous letter to Plaintiff, however, GMAC claimed the secured claim was $438,515.96; and in the Notice of Trustee Sale a few months later, it listed the amount as $468,987.69. (TAC ¶ 80.) Plaintiff avers that beside these accountings being grossly divergent, the fluctuations were implausible given Plaintiff's monthly payment during this period was $1,470.23, of which GMAC falsely and intentionally accounted for only $1,407.23 per month from October 2007 to December 2007 in order to deprive her of her home despite her paying $1,470.23 per month during the period. (TAC ¶ 74.)

argument.[5] *See* Fed. R. Civ. P. 78; C.D. Cal. L. R. 7–15. The Court notes, however, that its last order directed Plaintiff to eliminate from her lengthy pleadings any generalized or sensationalized characterizations of the mortgage industry not *directly related* to the *facts* constituting *Plaintiff's* claims against *Defendants*. (ECF No. 48.) The Court also admonished Defendants to specifically tailor to Plaintiff's TAC any subsequent motion to dismiss and to avoid mere regurgitations of previously filed motions. *Id.* On the whole, it appears that both parties have only halfheartedly complied with this directive. To the extent that the parties ignored the Court's admonition, the Court will not consider those arguments it deems unnecessarily repetitive.

Plaintiff's TAC alleges seven claims: (1) fraud; (2) violation of California's Unfair Competition Law ("UCL") under California Business and Professions Code section 17200; (3) financial elder and dependent adult abuse ("FEDAA") under California Welfare and Institutions Code section 15600 et seq.; (4) violation of the Fair Housing Act ("FHA") under 42 U.S.C. § 3601 et seq.; (5) violation of the Equal Credit Opportunity Act ("ECOA") under 15 U.S.C. § 1691 et seq.; (6) violation of the Civil Rights Act ("CRA") under 42 U.S.C. § 1981 et seq.; and (7) quiet title. (ECF No. 50.) Defendants now move to dismiss the entire TAC. (ECF No. 56.) The Court addresses Defendants' arguments and the sufficiency of Plaintiff's claims below.

### III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under

---

[5] The Court notes that Plaintiff has failed to adhere strictly to the Court's deadlines, such as by the late filing of her oppositions both to the previous motion to dismiss and the instant Motion. The Court will not tolerate such tardiness in the future. *See* L.R. 7–12.

Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well*

5

*Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

The Court begins its analysis by addressing Plaintiff's first claim for fraud. The Court then considers the UCL claim. The Court turns next to Plaintiff's FEDAA claim, followed by combined analysis of her claims for violation of the FHA, ECOA, and CRA. The Court concludes by addressing Plaintiff's claim for quiet title.

### A.   First Claim for Fraud

Plaintiff's first claim alleges Defendants individually and collectively engaged in fraudulent activity associated with (1) the origination process of her refinance loan; and (2) the subsequent foreclosure and bankruptcy proceedings. (TAC ¶ 71.) Defendants argue that Plaintiff has failed to allege "which Defendants made any representations related to material facts, with knowledge that such representations were false" nor which "officers, directors, or managing agents . . . made a representation, or in what capacity." (Mot. 6.) Because Plaintiff has now pleaded sufficient factual matter from which the Court may infer that *some* of her allegations are plausible, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

Pleadings of fraud are subject to a heightened standard, which requires pleading "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" means that averments of fraud must be coupled with "the who, what, when, where, and how" of the misconduct alleged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). Thus, claims under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

While Rule 9(b) is a federally imposed rule, "a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a

cause of action." *Vess*, 317 F.3d at 1103. In California, the elements of a fraud claim are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1044 (E.D. Cal. 2010) (citing *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003)).

Contrary to Defendants' assertions, Plaintiff's TAC offers sufficient detail concerning her fraud claim. Distinguishable from her previous attempts, Plaintiff lists in her TAC the precise misrepresentations made to her and the circumstances surrounding those representations. (TAC ¶¶ 24–30, 52–67, 69–71.) For instance, Plaintiff alleges that Defendant Direct "repeatedly" barraged her with "direct mailings, door-to-door solicitations and phone calls" beginning "shortly before March 24, 2005." (TAC ¶ 52.) She further asserts that after twice obtaining loans with Direct, she was promised— within eight months of closing her second loan—"an even better loan, at the incredibly, unbelievably low interest rate of 2% which was far below the market rate and would cut [her] monthly payments by half." (TAC ¶ 60.) Although Direct claimed this loan had "no hidden fees or surprise charges," *id.*, Plaintiff contends that on March 17, 2006, she was "lured" into the new loan, unaware the 2% teaser rate would last less than two months (TAC ¶ 30). Contrary to Direct's claims, the loan was more costly than her previous loan. *Id.*

To be sure, Plaintiff does not offer any names of the persons making the representations or their authority to speak. *See Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991). Nevertheless, it would be both far-fetched and unrealistic for a court to require that an individual consumer engaging in a mortgage transaction *always* inquire as to the lender's employee's name, with the thought that this employee would inflict a future wrong on her. *Malmen v. World Sav. Inc.*, No. 10-CV-9009-AHM, 2011 WL 1464587, at *4 (C.D. Cal. Apr. 18, 2011).

The problem with Plaintiff's assertions concerning the loan origination process, however, is that these allegations are against Direct. The only connection Plaintiff

claims exists among GMAC, ETS, and Direct is: (1) Direct was the loan originator; (2) GMAC was the loan servicer and eventual successor in interest; and (3) ETS was the eventual trustee. (TAC ¶¶ 2–4.) As between Direct and MERS, Plaintiff alleges: (1) Direct was a MERS member; (2) MERS was "allegedly" the original mortgage nominee and beneficiary under the Deed of Trust executed on March 17, 2006; and (3) MERS "wrongfully and exclusively reaped the benefits" of the loan. (TAC ¶¶ 5, 71.) Plaintiff has offered no authority, however, to support her position that a loan servicer, trustee, assignee, nominee beneficiary, or even a successor in interest can be liable vicariously for the actions of an originator. Except in the case of corporate succession, certain product-injury claims, or statutorily imposed liability, the assignee or purchaser of an asset does not become vicariously liable for its predecessor's fraud or other torts without an explicit contractual agreement to assume such liability. *See Henkel Corp. v. Hartford Accident & Indem. Co.*, 29 Cal. 4th 934, 941–42 (2003). Here, Plaintiff has not pleaded facts respecting any of these exceptions.

Further, reaping the benefits of a mortgage transaction, without more, does not *ipso facto* imply wrongdoing by any of the parties to the transaction. Even if Plaintiff could establish GMAC and MERS's complicity in Direct's alleged misconduct in the loan origination process, she faces another hurdle: despite Plaintiff's contention that she was misled about the terms of the March 17, 2006 loan because "it was not clear" that Plaintiff would be in "negative amortization from the beginning," the adjustable rate rider attached to the deed of trust prominently alerts her otherwise. (TAC ¶ 70.) Plaintiff argues that she was unaware of the "payment shock" that would befall her once her payment rose according to the negative amortization schedule. (TAC ¶¶ 28–29.) Notably, however, the rider informed Plaintiff that "[t]he note contains provisions allowing for changes in the interest rate and the monthly payment." (Def.'s RJN, Ex. A.) It further states that the 2% interest rate could change as early as May 1, 2006, at a rate "never to be greater than 12%." *Id.* Plaintiff does not contest signing the rider but alleges the "terms of the loan [were] not clear or conspicuous, nor

consistent, and [were] illegal" due to "extremely high ratios that were utilized with respect to" Plaintiff's income and liabilities. (TAC ¶ 30.) Because the Court finds that the loan origination is not attributable to MERS, ETS or GMAC, it need not reach the question whether the terms were illegal or unclear and inconspicuous. Accordingly, Defendants' Motion to Dismiss Plaintiff's fraud claims concerning GMAC, ETS, and MERS—as it pertains to the *origination* of the March 17, 2006 loan—is **GRANTED**. Because the Court finds a fourth opportunity to amend would be futile, Plaintiff's fraud claims as they pertain to origination are **DISMISSED WITH PREJUDICE**. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.").

On the other hand, Plaintiff's fraud claims against GMAC and MERS concerning their alleged misrepresentations to Plaintiff and the U.S. Bankruptcy Court is another question altogether. Plaintiff alleges she and the bankruptcy trustee were making payments throughout the bankruptcy process for several months leading up to the foreclosure sale, and "GMAC failed to properly account for such payments and instead knowingly and falsely represented to" Plaintiff, MERS, and the bankruptcy court that Plaintiff "missed payments."[6] (TAC ¶ 74.) Plaintiff further contends she and others relied on this misrepresentation, and that MERS used these "false

---

[6] Plaintiff alleges "GMAC was responsible for preparing and submitting the Proof of Claim for the subject loan in [P]laintiff's bankruptcy case, which it did on or about September 26, 2007, wherein it stated that the amount of secured claim was $432,651.44, and the amount of arrearage was $9,649.74." (TAC ¶ 73.) In a simultaneous letter to Plaintiff, however, GMAC claimed the secured claim was $438,515.96; and in the Notice of Trustee Sale a few months later, it listed the amount as $468, 987.69. (TAC ¶ 80.) Plaintiff avers that beside these accountings being grossly divergent, the fluctuations were implausible given Plaintiff's monthly payment during this period was $1,470.23, which she diligently paid each month. (TAC ¶ 74.) According to Plaintiff, GMAC failed to properly account for her payments by "intentionally and wrongfully alter[ing] the numbers by juxtaposing the numbers to make it appear that one of the payments received was only for $1,407.23, when in fact it was for $1,470.23." (*Id.*) MERS then used these faulty accountings as the basis for filing a Motion to Lift the Automatic Stay with the bankruptcy court. (*Id.*)

accountings" to file "a Motion to Lift the Automatic Stay with the bankruptcy court." *Id.* That motion was granted, Plaintiff avers, because both GMAC and MERS misled the court. (TAC ¶ 75.)

If, as Plaintiff asserts, GMAC and MERS knowingly submitted faulty accounting to the U.S. Bankruptcy Court in order to lift the automatic stay so they could fraudulently proceed with a foreclosure sale despite Plaintiff being current on her mortgage payments, then Plaintiff's fraud claim concerning these defendants survives. (TAC ¶ 41.) Taken as true, Plaintiff's allegation that Defendants maliciously moved to lift the automatic stay based on faulty calculations, which precipitated the foreclosure, adequately states a claim for fraud against Defendants GMAC and MERS. *See Lee*, 250 F.3d at 688. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss concerning the fraud claim associated with the bankruptcy and foreclosure proceedings as it pertains to GMAC and MERS.

Concerning ETS, however, Plaintiff does not directly assert that ETS was complicit in or aware of the alleged fraud, only that it was "caused [to] prepare and record an inaccurate, deceptive Notice of Default dated January 9, 2009."[7] (TAC ¶ 76.) The closest Plaintiff comes to implicating ETS in active fraud is by alleging ETS "conspired" with the other defendants "to create and record fake, false and forged deeds." (TAC ¶ 83.) Plaintiff offers no factual matter beyond this formulaic recital of a conspiracy claim to implicate ETS. *Twombly*, 550 U.S. at 555. Because Plaintiff has not alleged any active participation in fraud by ETS, and because amendment would be futile, Defendants' Motion to Dismiss this claim against ETS is **GRANTED WITHOUT LEAVE TO AMEND**.

In sum, that part of Plaintiff's fraud claim premised on alleged wrongdoing in the loan origination process is **DISMISSED WITH PREJUDICE** as against GMAC, MERS and ETS. Plaintiff's fraud claim against GMAC and MERS survives *only*

---

[7] The Notice listed the default amount as $21,600.97.

insofar as it relates to the alleged fraudulent accounting that directly precipitated the foreclosure. Plaintiff's fraud claim against ETS is **DISMISSED WITH PREJUDICE** in its entirety.

## B. Second Claim for Violation of California's Unfair Competition Law

Plaintiff next alleges a claim under California's UCL. Cal. Bus. & Prof. Code § 17200. Defendants argue the UCL claim should fail because Plaintiff has pleaded "no viable causes of action." (Mot. 13.) Except as it relates to ETS, the Court disagrees and therefore **DENIES** Defendants' GMAC and MERS's Motion to Dismiss concerning this claim.

The UCL prohibits, *inter alia*, any "unlawful" or "fraudulent business act or practice" and "deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, liability under each prong of the UCL is separate and distinct from the others; the statute therefore "applies separately to business acts or practices" that are unlawful or fraudulent. *Clark*, 732 F. Supp. 2d at 1050. "As to the unlawful prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law." *Id.* (citing *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). A practice is "fraudulent" if members of the public are likely to be deceived. *Id.* Additionally, allegations of fraudulent conduct under section 17200 must satisfy the heightened pleading requirements of Rule 9(b). *Vess,* 317 F.3d at 1103–05.

For the reasons discussed above, Plaintiff's fraud claim survives against GMAC and MERS. Therefore, a predicate claim exists under either the "unlawful" or "fraudulent" prong or both, which makes the section 17200 claim independently actionable. Accordingly, the Court finds that plaintiff has stated a claim for relief against GMAC and MERS and therefore **DENIES** Defendants' Motion to Dismiss regarding them; however, the Court **GRANTS WITHOUT LEAVE TO AMEND**

the Motion as against ETS for the same reasons set forth in the Court's analysis of Plaintiff's fraud claim.

## C. Third Claim for Financial Elder and Dependent Adult Abuse

Plaintiff alleges Defendants violated the FEDAA statute. Cal. Welf. & Inst. Code § 15600 et seq. (TAC ¶ 112.) Defendant contends that the claim is not pleaded with particularity and is at least partially time-barred. (Mot. 6, 7.) The Court disagrees with respect to GMAC and MERS.

The California Legislature enacted the Elder Abuse and Dependent Adult Civil Protection Act "to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect." *Negrete v. Fid. & Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1001 (C.D. Cal. 2006). The Act also applies to dependent adults, which it defines as "any person between the ages of 18 and 64 years who resides in the state and who has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights." Cal. Welf. & Inst. Code §15610.23.[8]

In pertinent part, the statute defines "financial abuse" of a dependent adult as occurring when a "person or entity" takes or appropriates, or assists in taking or appropriating, the real property of a dependent adult for "a wrongful use" or with "intent to defraud, or both." § 15610.30(a)(1)–(3). A "wrongful use" includes taking real property "in bad faith." § 15610.30(b). Moreover, the entity acts in "bad faith" when it takes or appropriates the property knowingly or when it "should have known that" the dependent adult "had the right to have the property . . . made readily available." § 15610.30(b)(1). Lastly, a person or entity should have known of such a right "if, on the basis of the information received by the person or entity or the person or entity's authorized third party, or both, it is obvious to a reasonable person that the"

---

[8] Unless otherwise indicated, all further statutory citations are to the California Welfare and Institutions Code.

dependent adult "has [such] a right." § 15610.30(b)(2); *Zimmer v. Nawabi*, 566 F. Supp. 2d 1025, 1033–34 (E.D. Cal. 2008).

Because it is largely grounded in fraud, a FEDAA claim must be pleaded with particularity. *Vess*, 317 F.3d at 1103–05; *Delaney v. Baker*, 20 Cal.4th 23 (1999). Further, it has to be brought "within four years after the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered, the facts constituting the financial abuse." § 15657.7.

The most current version of the Act became effective on January 1, 2009, which substantively changed some provisions. *See, e.g.*, *Das v. Bank of Am., N.A.,* 186 Cal. App. 4th 727, 736–37 (2010) (concluding that the 2008 amendments to the Act were not retroactive because the amendments were substantive, rather than procedural, and the legislature did not explicitly make the amendments retroactive). Accordingly, to state a claim a plaintiff must plead using the language of the statute that was applicable at the time of the alleged violation. *Id.* The relevant change involved the "knew or should have known" language which was absent from the earlier version. *Id.* at 736. Accordingly, before the revision one needed to sufficiently plead bad faith or fraudulent intent. *Id.* at 744.

Despite Defendants' protestations to the contrary, Plaintiff has pleaded this claim against GMAC and MERS with particularity under either version of the statute. Taken as true, the well-pleaded allegations in the TAC apprise the Court and the Defendants of the who, what, where, when, and how of this claim. *Vess*, 317 F.3d at 1103–06. For instance, Plaintiff has alleged that during the relevant period she was between 18 and 64 and had a recognized physical disability. (TAC ¶ 109.) She was a resident of California. (TAC ¶ 1.) Defendants were persons or entities within the meaning of the statute. (TAC ¶ 2–5.) Defendants either assisted or directly took or appropriated her real property through bad faith or for a wrongful use by materially depriving her of her home of 37 years through foreclosure. (TAC ¶ 74.) Regarding the applicability of the different versions of the statute, Plaintiff sufficiently pleaded

Defendants' bad faith concerning the pre-2009 false accountings. *See Das*, 186 Cal. App. 4th at 744. Further, the scienter requirement of the post-2009 version of the statute is also well-pleaded because Defendants GMAC and MERS were presumably aware of, or at least should have been aware of, Plaintiff's status as a dependent adult and that she was not in default during the recording of the Notice of Default in January 2009—and subsequent trustee sale in January of 2010. *See id.* at 736.

With respect to ETS, however, Plaintiff's FEDAA claim fails for the same reasons discussed above with respect to Plaintiff's underlying fraud claim. Specifically, beyond a formulaic recital of a conspiracy claim, Plaintiff does not directly assert that ETS was complicit in or aware of any alleged fraud—only that ETS was "caused [to] prepare and record an inaccurate, deceptive Notice of Default." (TAC ¶ 76.)

Turning to Defendants' statute of limitations argument, because the Court dismisses Plaintiff's claims tied to the loan origination against Defendants, the statute of limitations here applies only to Plaintiff's FEDAA claim as it relates to Defendants' actions directly precipitating the foreclosure, i.e., the faulty and false accounting Plaintiff alleges. (TAC ¶¶ 73–80.) That set of events occurred as recently as 2008–2010. *Id.* Plaintiff filed her first complaint in this case on February 4, 2011. (ECF No. 1.) Thus, this claim is timely. § 15657.7.

The Court therefore finds both that Plaintiff has sufficiently pleaded this claim and that it is not time-barred. Accordingly, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part with respect to Plaintiff's third claim for FEDAA. It is **GRANTED WITHOUT LEAVE TO AMEND** as to ETS for the same reasons laid out in the Court's discussion of Plaintiff's underlying fraud claim. As to Defendants GMAC and MERS, however, the Court **DENIES** Defendants' Motion; Plaintiff's FEDAA claim therefore survives as against GMAC and MERS.

**D. Fourth, Fifth, and Sixth Claims for Violation of the Fair Housing Act, Equal Credit Opportunity Act, and Civil Rights Act**

Plaintiff alleges Defendants collectively violated (1) the FHA under 42 U.S.C. § 3601 et seq.; (2) ECOA under 15 U.S.C. § 1691 et seq.; and (3) CRA under 42 U.S.C. § 1981 et seq. (TAC 1.) These claims are discussed together because they share common themes. First, they derive from Plaintiff's allegations that racial animus was a factor in the refinancing of her home and the transactions' terms. (TAC ¶ 13.) Second, they are exclusively tied to the origination of Plaintiff's March 17, 2006 loan, as opposed to the faulty accounting and foreclosure process discussed *supra*. Third, Defendants argue the first and third claims are time-barred and that all the claims are factually deficient to state a claim for relief. (Mot. 8–11.) Because the Court summarily dismisses these claims as moot against the moving Defendants, it need not reach the statute of limitations issue.

In its March 9, 2012 Order, the Court found that Plaintiff's claims for violation of the FHA, ECOA, and CRA arose out of the conduct, transaction, or occurrence set out in Plaintiffs prior pleadings. (ECF No. 48.) Accordingly, the Court allowed Plaintiff to proceed on these claims, so long as she sufficiently addressed their deficiencies as addressed in Defendants' previous motion. *Id.* One such deficiency involved repeatedly lumping together all Defendants without specifying to which one Plaintiff was imputing a particular allegation. *Id.* To her credit, Plaintiff has undertaken noteworthy effort to separate the claims attributable to each defendant. It is now clear, however, that these claims are essentially and substantively against Direct only.

As Defendants' instant Motion points out, the main thrust of Plaintiff's allegation against GMAC and MERS concerning the lending process is premised on their allegedly conspiring with Direct "to commit such discrimination against plaintiff and / or ratif[ying] and accept[ing] the benefits of such discrimination." (Mot. 8 (quoting TAC ¶¶ 127).) This allegation is emblematic of Plaintiff's pattern of ambiguous pleading. As addressed above, Plaintiff has not sufficiently pleaded conspiracy and cannot vicariously impute Direct's alleged misconduct to successors,

assignees, trustees or servicers who are independent actors. *See Henkel*, 29 Cal. 4th at 941–42.

In her Opposition, Plaintiff asks this Court to take judicial notice of several administrative reports of federal entities allegedly implicating Defendants Direct, GMAC and MERS in unfair lending practices. (Pl.'s RJN, Exs. A–E.) In her TAC, Plaintiff accuses Direct—and by implication GMAC, MERS, and ETS—of "generating more higher priced loans than market competitive ones to a disproportionately higher percentage of minority borrowers . . . than to similarly creditworthy Caucasian borrowers." (TAC ¶ 26.) As Defendants aptly note, Plaintiff has not sufficiently supplied facts supporting the overbroad claims of "targeting" and "reverse red-lining" in *this* case. (Mot. 9.) Even if the Court were to take judicial notice of these reports, Plaintiff's claims in this regard still fail because they do not *directly* implicate GMAC, MERS, and ETS in racially discriminating against Plaintiff in the instant action for the relevant activities, i.e., the alleged fraudulent accounting and subsequent foreclosure.

Accordingly, because Plaintiff has not sufficiently pleaded factual matter implicating MERS, GMAC, or ETS in the alleged shenanigans tied to the loan origination, the Court **GRANTS** Defendants' Motion to Dismiss these three claims. Plaintiff has had ample opportunity to amend her complaints to sufficiently plead facts constituting claims against Defendants for violation of the FHA, ECOA, and CRA. Because further amendment would be futile, these claims are **DISMISSED WITH PREJUDICE**.

### E. Seventh Claim For Quiet Title

Plaintiff's seventh claim seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone. (TAC ¶ 146.) Defendant argues that Plaintiff cannot state a claim for quiet title because she has not tendered the amount borrowed on the property ($399,000.00) and her complaint is not verified. (Mot. 12–13.) In its March 9, 2012 Order granting Defendants' motion to dismiss Plaintiff's Second

Amended Complaint, the Court urged Plaintiff that to the extent she argues her factual circumstances demonstrate a scenario wherein requiring her to tender her obligation prior to challenging the foreclosure would be inequitable, she needed to unambiguously plead as much. (ECF No. 48.) The Court finds that Plaintiff still has not sufficiently alleged tender for purposes of her quiet title claim.[9]

"The purpose of a quiet title action is to establish one's title against adverse claims to real property." *Argueta v. J.P. Morgan Chase*, No. CIV 2:11-441 WBS, 2011 WL 6012323, at *6 (E.D. Cal. Dec. 1, 2011). The basic requirement of an action to quiet title in California is an allegation that plaintiffs "are the rightful owners of the property, i.e., they have satisfied their obligations under the Deed of Trust." *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009); *accord Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010) ("In California it is well-settled that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.") Accordingly, Plaintiff must allege ability to tender the entire amount "admittedly borrowed." *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 914 (C.D. Cal. 2009). Moreover, a Plaintiff's allegation of tender or ability to tender must be "credible." *E.g.*, *Cuaresma v. Deustche Bank Nat'l Co.*, No. C–11–03829 RMW, 2011 WL 4727805, at *3, *5 (N.D. Cal. Oct. 7, 2011) (finding that "plaintiffs must allege a credible tender of the amount of the secured debt to maintain any cause of action" for wrongful foreclosure and noting that "California courts apply the same tender rule to quiet title that applies in a wrongful foreclosure action").

Here, Plaintiff's allegations regarding her ability to tender are inconsistent at best. On the one hand Plaintiff avers she "has tendered to . . . GMAC sums totaling over $21,700.00, and such sums adequately cured the default in full even if it was

---

[9] The Court further notes that both Plaintiff and Defendants have spent considerable time in their papers disputing whether the TAC was verified. Because the Court finds that Plaintiff has failed to adequately plead tender, the Court does not reach the issue whether Plaintiff's quiet title claim fails for want of a verified complaint.

indeed $21,600.97 as defendants have claimed." (TAC ¶ 44) On the other hand, Plaintiff contends Defendants "have no legal or equitable right, claim or interest" in the Subject Property. (TAC ¶ 146.) Plaintiff does not dispute borrowing the $399,000.00. The TAC is silent, however, as to whether Plaintiff has the ability to tender the *entire* amount admittedly borrowed. *Garcia*, 676 F. Supp. 2d at 914. Moreover, Plaintiff contends that Defendants have prejudiced her very ability to exercise her statutory right to cure her default because "it was and is impossible to reasonably determine what actual amount needed to be tendered in order to meet the obligation prior to the trustee sale, or even now post-trustee sale." (TAC ¶ 46.) Absent from the TAC is a credible offer to tender whether the amount was $399,000.00 or $483,275.48. *See Cuaresma*, WL 4727805, at *3, *5. Finally, Plaintiff fails to address how, if at all, her pending bankruptcy proceedings affect her purported ability to tender. In light of these inconsistencies in Plaintiff's TAC, a mere conclusory statement alleging tender does not suffice to allege a "credible" tender to quiet title. Accordingly, because Plaintiff has not stated a claim, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's quiet title claim, which is **DISMISSED WITH PREJUDICE**.

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is **GRANTED** in its entirety **WITHOUT LEAVE TO AMEND** as to Defendant ETS. Defendants' Motion is **GRANTED** in part and **DENIED** in part as to GMAC and MERS. Specifically, Plaintiff's first claim for fraud is **DISMISSED WITH PREJUDICE** as against GMAC and MERS insofar as it relates to the loan origination process. The first claim survives, however, as against GMAC and MERS concerning the alleged fraudulent accounting that directly precipitated the foreclosure on the Subject Property. Further, GMAC and MERS's Motion to Dismiss Plaintiff's second claim for violation of the UCL is **DENIED**. Likewise, GMAC and MERS's Motion to Dismiss Plaintiff's third claim for FEDAA is **DENIED**. Moreover, Defendants'

Motion to Dismiss Plaintiff's fourth, fifth, and sixth claims for violation of the FHA, ECOA, and CRA, respectively, is **GRANTED** in its entirety **WITHOUT LEAVE TO AMEND**. Finally, Plaintiff's seventh claim for quiet title is also **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

June 20, 2012

_____
**HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**